IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ROBERT L. LEWIS                                                                                    PLAINTIFF

v.                          Civil No. 05-2078

JO ANNE B. BARNHART, Commissioner
Social Security Administration                                                                     DEFENDANT

## MEMORANDUM OPINION

Plaintiff Robert L. Lewis brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claims for supplemental security income benefits (SSI) pursuant to § 1602 of Title XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 1381a. In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See 42 U.S.C. § 405(g).*

## Procedural and Factual Background

The plaintiff filed his application for SSI on November 19, 2002, alleging an onset date of September 1, 2001.[1] (Tr. .) The application was initially denied (Tr. 30-31) and that denial was upheld upon reconsideration (Tr. 32-33, 40-41). Plaintiff then made a request for a hearing by an Administrative Law Judge (ALJ). (Tr. 42-43.)

On July 8, 2003, a hearing was held by the ALJ. The plaintiff was represented by counsel

---

[1] While plaintiff's SSI application lists an onset date of September 1, 2001, he states in his Disability Report Adult that he became unable to work due to his illness in November 2002 but that he stopped working in September 2002 because of the illness. (Tr. 85.) At the hearing, plaintiff testified that the September 1, 2001 date was used as an onset date because that was the date of diagnosis of hepatitis C. (Tr. 173-174.) The record reflects that the diagnosis was actually made in November 2002. (Tr. 136.)

at this hearing. (Tr. 163-188.) The ALJ issued an unfavorable ruling on March 12, 2004, deciding that the plaintiff was not disabled within the meaning of the Act. (Tr. 15-26.) The plaintiff then requested a review of the hearing by the Appeals Council (Tr. 13-14), which denied that request on April 23, 2005 (Tr. 3-5); thus, the ALJ's decision became the final action of the Commissioner. The plaintiff filed her complaint with this court on May 6, 2005, seeking judicial review of that decision. (Doc. 1.) Both parties have filed appeal briefs with the court. (Docs. 9, 10.) This case is before the undersigned pursuant to the consent of the parties. (Doc. 4.)

On November 7, 2002, Lewis walked into the emergency room at Sparks Regional Medical Center in Fort Smith, Arkansas. He reported to the doctor that his girlfriend had exposed him to hepatitis C through sexual contact and needle use. (Tr. 134.) Test results revealed that Lewis was a carrier of hepatitis B and likely a carrier of hepatitis C (Tr. 136), further tests confirmed the hepatitis C diagnosis. (Tr. 127.) At this time, plaintiff was unemployed. (Tr. 131, 133.)

On November 18, 2002, Lewis was examined by Dr. Suh Niba, for a follow-up after diagnosis. At that time, Lewis had no acute complaints. Dr. Niba noted, "there is no complaint of general body malaise or right upper quadrant pain, no complaints of nausea, vomiting, febrile illness or jaundice." (Tr. 127.) Lewis reported that he smoked a pack of cigarettes per day and had a history of drug use including marijuana, crack, and cocaine, but that he had been clean for the previous two months. (Tr. 126.) Dr. Niba assessed Lewis with acute hepatitis B infection, hepatitis C infection, polysubstance abuse (IV drug use), and tobacco use. (Tr. 125.) Dr. Niba ordered additional testing for the hepatitis C infection. (Tr. 125.)

On November 27, 2002, Lewis had a follow-up appointment with Dr. Niba. Again, he

did not report being in any acute distress. Dr Niba noted that there was "normal sclera, no jaundice." An ultrasound of plaintiff's liver and gallbladder was conducted. Sludge was noted within the gallbladder, otherwise it was a normal gallbladder and liver. (Tr. 132.) Dr. Niba counseled Lewis on the importance of a healthy lifestyle. Dr. Niba opined that plaintiff was "doing well subjectively presently." (Tr. 123.) Dr. Niba did not prescribe any medications for plaintiff, and there is no indication that plaintiff's financial status prevented a prescription from being written.

On October 20, 2003, Lewis was seen by Dr. Steven Carney at the direction of the ALJ for a general physical examination. Dr. Carney noted that Lewis complained of chronic headaches, stomach pains, dizziness, nausea and vomiting, and depression. Lewis reported that he did not have the financial means to afford medications for hepatitis or depression. (Tr. 144.) At the time, plaintiff was not receiving treatment for depression. (Tr. 146.) Plaintiff had some difficulty walking on heels and toes and to squat and arise from a squatting position. (Tr. 148.) Dr. Carney found that plaintiff's ability to work was somewhat limited due to general malaise and hepatitis. (Tr. 150.)

In a physical assessment of abilities, Dr. Carney determined that plaintiff could occasionally lift and/or carry up to 20 pounds; never lift and/or carry 20 to 100 pounds; sit 5 hours of an 8 hour work day; stand and/or walk 3 hours of an 8 hour work day; frequently grasp, use fine manipulation, handle objects, and feel objects; occasionally operate controls with hands and feet and reach; occasionally climb, balance, stoop, and crouch; and never kneel or crawl. Lewis should avoid moderate exposure to heights, moving machinery, chemicals, noise, and temperature extremes; and concentrated exposure to humidity, dust/fumes, and vibrations. (Tr.

AO72A
(Rev. 8/82)

151.)

Prior to Lewis's testimony at the hearing, his counsel requested that, due to his lack of financial means, that the ALJ send the plaintiff for a physical and mental consultation. The ALJ took the requests under consideration. (Tr. 167-168.)

At the hearing, plaintiff testified that he was 47 years of age. (Tr. 170.) He completed 11th grade high school, but did not graduate. (Tr. 92, 103, 170.) His previous work history included driving trucks for moving companies, which did not require him to have a CDL. He also worked as a city street maintenance worker in Wichita, Kansas. (Tr. 171-173.) Because he could not afford albumin treatment, plaintiff attempted to obtain Medicaid, but was told that he needed to apply for Social Security Disability instead. (Tr. 174-175.) The only mental health treatment that the plaintiff has received was when he was incarcerated. (Tr. 175.)

Plaintiff testified that the hepatitis causes him stomach problems, a need to sleep frequently, dizziness, and headaches. (Tr. 175-176, 178-179.) Plaintiff testified that his condition is becoming worse due to his inability to afford the medications that the doctors have recommended that he take, such as interferon. (Tr. 177.) Plaintiff also testified that he has suffered from depression since his diagnosis because he is worried that he might transmit the virus to others and is unable to afford the medications necessary to treat the condition. (Tr. 178-179.)

A vocational expert (VE) testified that given the restriction of being able to perform light work, with a further restriction on the ability to stoop, crouch, kneel, and crawl, and that the person not work with food handling, that a person with plaintiff's chronological, vocational, and educational background could work as an assembler, for which there are 10,000 jobs in Arkansas

and 872,000 in the United States, and as a cashier, for which there are 9,500 jobs in Arkansas and 900,000 in the United States. These jobs are both light and unskilled. (Tr. 181-183.) The VE testified that there are no jobs that would allow a person to work only two or three hours a day and then have to rest or lie down. (Tr. 183.)

In his decision, the ALJ found that (1) while the hepatitis B and C is a "severe" impairment, this impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; (2) as there was no medical evidence in the record, plaintiff's alleged depression is considered "non-severe," (3) plaintiff's claims regarding his physical limitations are not totally credible, (4) plaintiff has the Residual Functional Capacity (RFC) "to perform a wide range of light exertional level activities" including lifting, carrying, pushing, and/or pulling 10 pounds frequently and 20 pounds occasionally, standing, walking, and sitting for 6 hours of an 8-hour workday, and occasionally stooping, crouching, kneeling, and crawling; (5) plaintiff is excluded from work activities where food handling is involved, (6) plaintiff is unable to perform any past relevant work, and (7) based on testimony from a VE there are significant jobs within the economy that plaintiff could perform such as an assembler and a cashier. Thus, the ALJ determined that plaintiff was not under a "disability" as defined by the Act, and therefore not entitled to SSI. (Tr. 26.)

On appeal, the plaintiff argues that the ALJ erred in (1) failing to fully and fairly develop the record as it pertains to plaintiff's allegation that he suffered from depression, (2) discrediting plaintiff's subjective complaints of pain, (3) determining an RFC that does not conform to Dr. Carney's medical opinions, and (4) finding that plaintiff could perform work as an assembler and cashier. (Doc. 9.)

**Applicable Law**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

In addition, whenever adult claimants allege a mental impairment, the application of a special technique must be followed at each level of the administrative review process. See *20 C.F.R. § 416.920a(a)*.

The Commissioner is then charged with rating the degree of functional limitation, and applying the technique to evaluate mental impairments. See *20 C.F.R. § 416.920a(d)*. Application of the technique must be documented by the Commissioner at the ALJ hearing and Appeals Council levels. See *20 C.F.R. § 416.920a(e)*. Such documentation, as referred to within the regulations, shall be referred to herein as the PRT factors.

## Discussion

On appeal, Plaintiff advances several arguments in support of his theory that the Commissioner's decision should be reversed. Plaintiff's argument that the ALJ erred in failing to fully develop the record as it pertains to his alleged mental impairment of depression has

-7-

AO72A
(Rev. 8/82)

merit.

The relevant criteria for evaluation of mental impairments is set forth in *20 C.F.R. Pt. 404, Subpt. P, App. 1, Listings 12.00 and 20 C.F.R. § 416.920a*. With respect to Plaintiff's severe mental impairment, depression, the criteria used for the listed mental impairments is found at *20 C.F.R. Pt. 404, Subpt. P, App. 1, Listings 12.04*.

*Listing 12.00* provides in relevant part:

C. Assessment of severity. We measure severity according to the functional limitations imposed by your medically determinable mental impairment(s). We assess functional limitations using the **four criteria** in paragraph B of the listings: **Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation**. Where we use "marked" as a standard for measuring the degree of limitation, it means more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis. See §§ 404.1520a and 416.920a.

(emphasis added).

After the ALJ determines the extent of the four criteria above, the ALJ must then document those findings as stated below:

(a) General. The steps outlined in §§ 416.920 and 416.924 apply to the evaluation of physical and mental impairments. In addition, **when we evaluate the severity of mental impairments** for adults (persons age 18 and over) and in persons under age 18 when Part A of the Listing of Impairments is used, **we must follow a special technique at each level in the administrative review process**. We describe this special technique in paragraphs (b) through (e) of this section. Using this technique helps us:

(1) Identify the need for additional evidence to determine impairment severity;

(2) Consider and evaluate functional consequences of the mental disorder(s) relevant to your ability to work; and

(3) Organize and present our findings in a clear, concise, and consistent manner.

AO72A
(Rev. 8/82)

(b) Use of the technique.

(1) Under the special technique, we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s). See § 416.908 for more information about what is needed to show a medically determinable impairment. If we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our findings in accordance with paragraph (e) of this section.

(2) We must then rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c) of this section and record our findings as set out in paragraph (e) of this section.

(c) Rating the degree of functional limitation.

(1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment.

(2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter for more information about the factors we consider when we rate the degree of your functional limitation.

(3) **We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listing of Impairments**.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None,

one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

(d) Use of the technique to evaluate mental impairments. After we rate the degree of functional limitation resulting from your impairment(s), we will determine the severity of your mental impairment(s).

(1) If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities (see § 416.921).

(2) **If your mental impairment(s) is severe, we must then determine if it meets or is equivalent in severity to a listed mental disorder. We do this by comparing the medical findings about your impairment(s) and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder.** We will record the presence or absence of the criteria and the rating of the degree of functional limitation on a standard document at the initial and reconsideration levels of the administrative review process, or in the decision at the administrative law judge hearing and Appeals Council levels (in cases in which the Appeals Council issues a decision). See paragraph (e) of this section.

(3) **If we find that you have a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, we will then assess your residual functional capacity.**

(e) **Documenting application of the technique**. At the initial and reconsideration levels of the administrative review process, we will complete a standard document to record how we applied the technique. **At the administrative law judge hearing and Appeals Council levels (in cases in which the Appeals Council issues a decision), we will document application of the technique in the decision**.

(1) At the initial and reconsideration levels, except in cases in which a disability hearing officer makes the reconsideration determination, our medical or psychological consultant has overall responsibility for assessing medical severity. The disability examiner, a member of the adjudicative team (see § 416.1015), may assist in preparing the standard document. However, our medical or psychological consultant must review and sign the document to attest that it is complete and that he or she is responsible for its content, including the findings of fact and any discussion of supporting evidence. When a disability hearing officer makes a reconsideration determination, the determination must document application of the technique, incorporating the disability hearing officer's

pertinent findings and conclusions based on this technique.

(2) At the administrative law judge hearing and Appeals Council levels, the **written decision issued by the administrative law judge** or Appeals Council **must incorporate the pertinent findings and conclusions based on the technique**. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

(3) If the administrative law judge requires the services of a medical expert to assist in applying the technique but such services are unavailable, the administrative law judge may return the case to the State agency or the appropriate Federal component, using the rules in § 416.1441, for completion of the standard document. If, after reviewing the case file and completing the standard document, the State agency or Federal component concludes that a determination favorable to you is warranted, it will process the case using the rules found in § 416.1441(d) or (e). If, after reviewing the case file and completing the standard document, the State agency or Federal component concludes that a determination favorable to you is not warranted, it will send the completed standard document and the case to the administrative law judge for further proceedings and a decision.

20 CFR § 416.920a (emphasis added).

Here, the ALJ failed to comply with the requirements as set forth above. The ALJ failed to include any mention of the four areas required to be addressed in the PRT analysis. The ALJ stated:

> There is no medical evidence in the record to corroborate this allegation; accordingly, the claimant's alleged mental impairment of depression is considered non-severe.

(T. 20).

Such analysis is insufficient. The ALJ fails to document his findings of whether Plaintiff's depression has no, mild or marked impact upon his: activities of daily living; social

-11-

function; or, concentration, persistence and pace. The decision is also devoid of any mention of whether Plaintiff has ever experienced any episodes of decompensation in a work setting.

The undersigned acknowledges that the ALJ's decision may be the same after proper analysis. Nonetheless, proper analysis must occur. *Groeper v. Sullivan, 932 F.2d 1234, 1239 (8th Cir. 1991).*

In light of the undersigned's decision to remand based upon the insufficient PRT analysis and documentation, all other issues raised by Plaintiff are rendered moot and are not addressed.

**Conclusion:**

Accordingly, we conclude that the decision of the ALJ herein, denying benefits to the Plaintiff, is not supported by substantial evidence of record, and should be reversed. This matter should be remanded to the Commissioner for reconsideration consistent with this opinion.

DATED this 31st day of May 2006.

                                          **/s/ Beverly Stites Jones**
                                         _____
                                          HON. BEVERLY STITES JONES
                                          UNITED STATES MAGISTRATE JUDGE

**AO72A**
**(Rev. 8/82)**